## Pennsylvania Power & Light Company v. Leininger

*Roger N. Nanovic,* for plaintiff.
*Frederick J. Lanshe,* for defendant.

LAVELLE, *P.J.* December 16, 1983 — Plaintiff's complaint in equity seeks to permanently enjoin defendant from obstructing or hindering plaintiff's maintenance and use of its Hauto-Siegfried trans-

mission line easement over defendant's property in Mahoning Township.

On December 4, 1981, plaintiff filed a petition for preliminary injunction against defendant, together with a rule to show cause why defendant should not be enjoined from interfering with plaintiff's right of way. On December 11, 1981, after a hearing thereon, the court preliminarily enjoined defendant from interfering with plaintiff's access to its easement and plaintiff was allowed to enter defendant's property to perform necessary maintenance. Bond in the amount of $500 was filed with the prothonotary.

On or about May 21, 1982, defendant filed an answer and new matter admitting plaintiff had a 100 foot wide easement through defendant's land. On June 11, 1982, plaintiff filed its reply to new matter.

On August 15, 1983, the final hearing was held in this matter. All of the testimony and exhibits of the preliminary hearing were made part of the final hearing. Subsequent thereto, the parties submitted their respective proposed findings of fact and conclusions of law. Argument thereon was heard on November 2, 1983.

The case is now ripe for final disposition and we make the following

## FINDINGS OF FACT

1. Moses Zellner, Sr. by deed dated October 12, 1912, and recorded in the Office of Recorder of Deeds of Carbon County on March 7, 1913, in Deed Book Vol. 71, page 512, conveyed to Nesquehoning Electric Company an easement and right of way for the construction and maintenance of power lines used in transmission of electrical current.

2. Plaintiff, Pennsylvania Power and Light Company is the corporate successor in interest and title

of the Nesquehoning Electric Company to the abovesaid easement and as such is the owner of said easement and right of way.

3. The encumbrance clause of the deed conveyed the following uses appurtenant to said easement:

"[R]ight, liberty and privilege of ingress, egress and regress to the property aforesaid by the agents, employees and contractors of the party of the second part, its successors and assigns, with necessary forces, teams and other apparatus and appliances, for any and all of the purposes aforesaid, as well as the right, liberty and privilege of trimming and cutting down any and all trees upon the property above described or adjoining the same that may interfere with or menace the erection, construction, operation, maintenance or renewal of the said transmission lines or any appurtenances thereof or appliances therefore, without liability for damages, loss or injury that may be sustained by reason of the exercise of any of the said rights, liberties and privileges."

4. At the present time and since approximately 1920, plaintiff's 66 kilovolt transmission line (the Hauto Siegfried Line) is located on the said easement.

5. Said transmission line serves 11,000 of the plaintiff's electricity customers in the following locations: Bowmanstown, part of Lehighton and Mahoning Valley, Coaldale (including Coaldale State Hospital), Nesquehoning, Lansford and Summit Hill.

6. The said transmission line is in periodic need of maintenance in that brush and trees growing on said easement and "danger" trees growing adjacent to plaintiff's easement must be trimmed or removed. "Danger" trees are defined as those trees ad-

jacent to PP&L's easement whose branches would pass within five (5) feet of the transmission line if the said trees should fall.

7. Said easement is now located on the property of Bernard L. Leininger, defendant herein.

8. Said easement is approximately 119 feet wide by 800 feet long.

9. On September 2, 1981, a contractor, Forest Utilities, hired by plaintiff arrived on the easement in order to remove brush and trees from the easement and also to remove "danger" trees on land adjoining the easement. Notice was given to the defendant by the employees of PP&L, Pat Bohannon and Bryan Deeken, who met with defendant on August 26, 1981 and September 1, 1981, and explained to him the necessary work to be done. These employees agreed to cooperate with defendant by placing a barricade on the easement and piling felled "danger" trees to make the easement inaccessible to trespassers.

10. Defendant prevented said contractors from entering onto the easement on September 2, 1981, by screaming threats and obscenities at them, threatening the Line Clearance Supervisor of PP&L, Bryan Deeken, by raising a rock over Bryan Deeken's head and by threatening violence to PP&L's contractors and employees if they should go on the easement.

11. Defendant's action prevented the entrance of PP&L's contractors and employees onto approximately 3200 linear feet of the easement containing the transmission line because plaintiff must traverse its easement on defendant's property in order to reach other easements containing the same transmission line.

12. Defendant has developed a reputation among the PP&L crews for interference and obstruction to

attempts by PP&L to enter onto its easement and PP&L's crews are afraid to enter said easement because of threats of violence by defendant.

13. Said reputation and actions of defendant have prevented the plaintiff's entry onto its easement for approximately ten years for the purpose of doing vital maintenance work on the easement.

14. Plaintiff's unimpeded access to its easement on the property of defendant is especially crucial in the winter months when ice storms and snow can down transmission wires or cause trees to fall on transmission wires resulting in power interruptions to 11,000 customers. Plaintiff's unimpeded access must include access for maintenance vehicles and heavy equipment.

15. As of September 2, 1981, the easement contained brush approximately 15 feet high consisting of undergrowth and trees making passage in the easement impossible. The area also contained approximately 25 "danger" trees.

16. After hearing on the preliminary injunction in this matter and pursuant to court order of December 11, 1981, plaintiff entered onto its easement, removed approximately 20 "danger" trees on the easement and adjacent to the easement and also removed brush which interfered with access to the tranmission line.

17. Plaintiff is in need of immediate, continuous and unimpeded access to said easement in order to continually maintain and patrol said transmission line and to remove trees as they become "danger" trees and to deal with emergencies particularly in the winter months.

18. Plaintiff anticipates the need to go back to the easement in the next two to five years in order to remove other "danger" trees since plaintiff's work on said easement in December of 1981 only removed

those trees which presented an immediate threat to the transmission line.

19. Defendant's interference and obstruction of the easement of PP&L presents a clear and present danger of irreparable harm to the well-being and safety of a substantial portion of population of Schuylkill and Carbon County in that "danger" trees may fall on transmission line causing power failures and blackouts if such trees are not removed.

20. Defendant's actions likewise hinder the ability of plaintiff to respond in emergencies involving malfunctions on the transmission line, especially in winter months thus posing a danger of irreparable harm to the employees, contractors and customers of plaintiff.

21. Defendant's assurance that he will not interfere with the entry of PP&L's contractors and employees onto the easement is not worthy of belief and unacceptable in light of his past behavior.

## DISCUSSION

Equity will grant relief by enjoining interference with an easement where plaintiff established a clear, legal right to the remedy and there is an inadequate remedy at law. Williams v. Bridy, 391 Pa. 1, 136 A. 2d 832 (1957).

We conclude based on all the evidence presented and the applicable law, that plaintiff has met its burden of proof and is entitled to equitable relief.

By stipulation of the parties, plaintiff owns a valid, subsisting easement over the defendant's property for the purpose of constructing and maintaining electrical power lines.

Defendant, by word and action, has prevented the employees and contractors of plaintiff from using the easement and we are satisfied from the record

that unless equity intervenes, defendant will do so in the future.

Plaintiff has also demonstrated to the court that there exists no adequate remedy at law. The easement over defendant's property supports a 66 kilovolt transmission line that services 11,000 electrical customers (including a hospital) in seven communities. The record convinces us that prompt access to this line at all times is imperative, even vital, for proper maintenance and supply of electrical service to these customers. Money damages in a court of law could not possibly compensate plaintiff for defendant's tortious interference with its right of way, nor could the law side of the court even begin to evaluate the potential harm to the 11,000 consumers who might be injured because PP&L could not get onto the easement to service its line should they be down by the elements or vandalism.

The potential harm caused by defendant's interference with plaintiff's access to its power lines contrasts sharply with the defendant's failure to show any harm to his interest by the granting of an injunction. Indeed, defendant's sole objection to the granting of the injunction is that the clearing of the right of way of brush and shrubbery by plaintiff invites trespassers on snowmobiles and motor bikes. When the court puts on the scales of justice, the ominous threat of power failure to 11,000 consumers and the defendant's inconvenience caused by motor noises and loss of privacy, the scales tip heavily in favor of plaintiff. Defendant's openly hostile conduct towards plaintiff's clear legal right of access makes the granting of a permanent injunction necessary and proper. Tide Water Pipe Co. v. Bell, 280 Pa. 104, 110, 124 A. 351, 353 (1924).

Accordingly, we make the following conclusions of law

1. Plaintiff has no adequate remedy at law.

2. Equity has jurisdiction over the parties in this action.

3. Plaintiff is the owner of a valid written easement containing a 66 kilovolt transmission line on defendant's property. Plaintiff's easement is set forth in the deed from Moses Zellner, Sr. to Nesquehoning Electric Company recorded in Carbon County Deed Book Vol. 71, page 512.

4. Plaintiff has the legal right to maintain said transmission line and to remove brush and trees upon the easement or adjoining the same, which may interfere or menace the transmission line or any appurtenances thereof without liability for damages, loss or injury that may be sustained by reason of the exercise of any of the rights of plaintiff.

5. Defendant's interference with the access of plaintiff to said easement has been continuous, unreasonable and unwarranted.

6. Defendant's actions presents a clear and present, as well as a future danger to said transmission line and to the employees and contractors of the plaintiff and of irreparable harm to the customers served by said transmission line.

We therefore enter the following

## DECREE NISI

And now, December 16, 1983, it is hereby ordered and decreed as follows

1. Defendant, Bernard Leininger, is hereby enjoined and restrained permanently from obstructing, hindering or attempting to obstruct or hinder

ingress or egress to and from plaintiff's Hauto-Siegfried transmission line easement over and across the defendant's property by plaintiff's officers, agents, employees, representatives and others having business with the plaintiff for the following purposes:

a. To cut or remove to a height of no less than six (6) feet above the ground all "danger" trees, i.e., those which are creating a hazard to the plaintiff's Hauto-Siegfried transmission line and be adjacent to said transmission line.

b. To cut and remove all brush on plaintiff's easement area which traverses the defendant's property from the base of the hill to the top of the hill.

c. To erect, construct, operate, inspect, maintain, repair or renew transmission lines on the easement area.

2. The Sheriff of Carbon County is directed to use all power under the law to insure full compliance with the terms of this injunctive order.

3. In the event defendant continues to interfere at any time in the future with the rights of the plaintiff in its easement, defendant shall be subject to the full civil contempt powers of the court and a fine of $1,000 for every instance of interference by defendant. This court retains jurisdiction over this matter.

The prothonotary is directed to enter this decree nisi and to give notice thereof to the parties or their counsel of record. If no exceptions are filed within ten days after receipt of a copy of this decree nisi, it shall be entered by the prothonotary as a final decree on praecipe.

Costs on the defendant.